*300 INTRODUCTION
MARK BUTTERFIELD, Chief Judge.
This action centers around an agreement under which the plaintiff was to purchase 48,000 cartons of cigarettes from the defendant. On October 14, 1999, the Court received a Complaint from the Ho-Chunk Nation Department of Justice as counsel for the Ho-Chunk Nation, alleging that the defendant breached a “Purchase Agreement” and seeking return of an $87,120.00 down payment. The plaintiffs Complaint is based on a number of legal claims: Recission for Misrepresentations, Recission for Non-delivery, Breach of Contract for Non-delivery, Intentional Misrepresentation, Strict Responsibility Misrepresentations, Negligent Misrepresentations, Unjust Enrichment, and Civil Conversion. The defendant received the Con/plaint via personal service, and was given the full response time mandated by the Ho-Chunk Nation Rules of Civil Procedure. The defendant failed to respond to the Complaint, and the Court now issues this Default Judgment.
PROCEDURAL HISTORY
The plaintiff initiated this action by filing a Complaint on October 14, 1999. The Complaint named a number of defendants: Ross Olsen, in his individual capacity; Olsen & Associates, an unincorporated/voluntary association or partnership; and Doe 1 through Doe 4, unknown associates, partners, or otherwise interested parties individually and on behalf of Olsen & Associates, an unincorporated, voluntary association or partnership. Upon receipt of the Complaint, the Court attempted to effect service of process on the specifically named defendants. On October 15, 1999, the Court’s process server personally delivered two copies of the Summons and. Complaint to one Geor-gene Britton on behalf of Ross Olsen in his individual capacity and Olsen & Associates at the Eau Claire County Sheriffs Dept., Eau Claire, WI 54702. Unfortunately, however, this service is deemed ineffective under Rule 5(C)(a) of the Ho-Chunk Nation Rules of Civil Procedure because personal service is required for claims requesting relief in excess of $5,000.00.
To achieve compliance with Rule 5(C)(a), the Court attempted to serve Olsen & Associates as well as Ross Olsen in his individual capacity at both of the addresses listed in the Complaint. On October 18, 1999, the Eau Claire County Sheriff made an unsuccessful attempt to serve process on behalf of this Court at the first address listed on the Complaint. The Sheriffs Affidavit of Service states that the address given for Ross Olsen in his individual capacity and Olsen & Associates does not exist. On October 19, 1999, Metro Legal Services made an unsuccessful attempt to serve process on behalf of this Court at the second address listed on the Complaint. Metro Legal Service’s Affidavit of Not Found states that upon arrival at the given address, no answer was received and a neighbor informed the process server that Mr. Olsen had moved to Wisconsin.
After being informed of the unsuccessful attempts at service of process, the plaintiff conducted further investigation as to the whereabouts of Mr. Olsen. On November 24, 1999, one Aaron P. Miley, acting as an agent for the plaintiff, personally served Mr. Ross Olsen in his individual capacity and Olsen & Associates by handing him a copy of the Summons and, Complaint. On December 15, 1999, one Joseph P. Klien, acting as an agent of the Court, personally served Mr. Ross Olsen in his individual capacity and Olsen & Associates and by handing him a copy of the Summons and, Complaint. The defendants were given 20 *301 days from December 15, 1999 to respond to the Summons and Complaint as required by the Ho-Chunk Nation Rules of Civil Procedure. The Court received no response before the expiration of the allotted time.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Article I—Territory and Jurisdiction
Sec. 1 Territory
The territory of the Ho-Chunk Nation shall include all lands held by the Nation or the People, or by the United States for the benefit of the Nation or the People, and any additional lands acquired by the Nation or by the United States for the benefit of the Nation or the People, including but not limited to air, water, surface, subsurface, natural resources and any interest therein, notwithstanding the issuance of any patent or right-of-way in fee or otherwise, by the governments of the United States or the Ho-Chunk Nation, existing or in the future.
Sec. 2 Jurisdiction
The jurisdiction of the Ho-Chunk Nation shall extend to all territory set forth in Section 1 of this Article and to any and all persons or activities therein, based upon the inherent sovereignty of the Nation and the People or upon Federal law.
Article III—Organization of the Government
Sec. 2 Branches of Gove rnment
The government of the Ho-Chunk Nation shall be composed of four (4) branches: General Council, Legislature, Executive, and Judiciary.
Sec. 3 Separatio n of Funct ions
No branch of the government shall exercise the powers or functions delegated to another branch.
Sec. 4 Supremacy Clause
This Constitution shall be the supreme law over all territory and persons within the jurisdiction of the Ho-Chunk Nation.
Article IV—General Council
Sec. 2 Delegation of Authority
The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Article V—Legislature
Sec. 1 Composition of the Legislature
(a) Legislative powers shall be vested in the Legislature.
Sec. 2 Powers of the Legislature
The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(h) To enact all laws prohibiting and regulating conduct and imposing penalties upon persons within the jurisdiction of the Nation;
(q) To issue charter's of incorporation, to charter corporations and other organizations for economic or other purposes, and to regulate their activities;
(x) To enact any other laws, ordinances, resolutions, and statutes necessary to exercise its legislative powers delegated by the General Council pursuant to Article III *302 including but not limited to the foregoing list of powers.
Article VII—Judiciary
Sec. 4 Powers of the Judiciary
The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Sec. 5 Jurisdiction of the Judiciary
(a) The Trial Court shall have original jurisdiction over all cases and coiftrover-sies, both criminal and civil, in law or in equity, airsing under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6 Powers of the Trial Cmirt
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law' and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
HO-CHUNK NATION JUDICIARY ACT OF 1995
Sec. 2 Jurisdiction
The Ho-Chunk Nation Judiciary shall exercise jurisdiction over all matters within the power and authority of the Ho-Chunk Nation including controversies arising out of the Constitution of the Ho-Chunk Nation; laws, statutes, ordinances, resolutions and codes enacted by the Legislature; and such other matters arising under enactments of the Legislature or the customs and traditions of the Ho-Chunk Nation. This jurisdiction extends over the Nation and its territory, persons who enter its territory, its members, and persons w7ho interact with the Nation or its members wherever found.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 58. Amendment to or Relief from Judgement or Order
(A) Relief from Judgement. A Motion to Amend, or for relief from judgement, including a request for a new' trial shall be made within ten (10) calendar days of the filing of judgement. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgement, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgement accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgement, the time for initiating an appeal commences upon entry of the amended judgement. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgement commences when the Court denies the motion on the record or w'hen an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the entry of judgement, the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgement commences in ae- *303 cordance with the Rules of Appellate Procedure.
(C) Erratum Order or Reissuance of Judgement, Clerical errors in a court record, including the Judgement or Order, may be corrected by the Court at any time.
(D) Grounds for Relief. The Court may grant relief from judgements or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(1)(a) or (b); did not have proper service and did not appear in the action; or (4) the judgement has been satisfied, released, discharged or is without effect due to a judgement earlier in time.
FINDINGS OF FACT
1. The plaintiff, the Ho-Chunk Nation [hereinafter “Tribe” or “Nation”] is a federally recognized Indian tribe with offices located at W9814 Airport Road, P.O. Box 667, Black River Falls, Wisconsin, 54615.
2. Defendant, Ross Olsen (hereinafter Olsen), is sometimes described as the “CEO” of defendant Olsen & Associates. At different times, Olsen has given his address as P.O. Box 3101, Eau Claire, Wisconsin 54720, and as 6634 Central Ave., NE, Site 3 Fridley, Minnesota 55432.
3. In 1998, Olsen approached representatives of the Ho-Chunk Nation with a proposal to sell the Nation cigarettes for resale at the tribe’s retail outlets. In discussions with the Nation’s representatives, held within the sovereign lands of the Ho-Chunk Nation, namely at the Ho-Chunk Nation Executive Facility, W9814 Airport Road, Black River Falls, WI (a site located entirely on lands held in trust by the United States government for the benefit of the Ho-Chunk Nation), Olsen made the following representations: Olsen has described Olsen & Associates as “Olsen & Associates, Inc”; Olsen represented to the Nation that Olsen & Associates met all legal requirements of the federal and state governments in acquiring, handling and delivery of cigarettes to the Nation; Olsen represented to the Tribe that he could deliver cigarettes within two weeks of receiving a purchase order.
4. Following a number of discussions between the parties, held on the trust lands of the Ho-Chunk Nation, the Nation agreed to purchase one “container” of cigarettes (48,000 cartons) from the defendants. This agreement was formalized in a written Purchase Agreement, prepared by Olsen, and included a Purchase Order for one container of cigarettes at a cost of $871,200.00.
5. Under the Purchase Agreement, the tribe would make a down payment of 10% of the purchase price with the balance due “upon arrival of the product shipment” to a specified location within the sovereign lands of the Ho-Chunk Nation. Delivery was to be made “approximately two full work weeks from the date of the purchase order.” Complaint at paragraph 8.
6. On January 20, 1999, the Nation, through its President, signed the Purchase Agreement at the Ho-Chunk Nation Executive Facility located on the trust lands of the Ho-Chunk Nation.
7. On January 21, 1999, the Nation wrote a check to Olsen & Associates for $87,120.00 (10% of the purchase price). Olsen personally received this check on January 21, 1999 at the Ho-Chunk Nation Executive Facility. Olsen received the check from a tribal official on assurances *304 that Olsen had signed the Purchase Agreement.
8. There is no evidence that Olsen has signed the purchase agreement.
9. After receiving the Tribe’s down payment on January 21, 1999, Olsen assured the Nation that everything was in order and that he would keep in communication regarding delivery of the container of cigarettes to the Nation.
10. The Nation made preparations to receive the container, including finding a location for storage of the cigarettes.
11. From the date Olsen received the Nation’s down payment, several weeks passed during which the Nation was unable to contact him. When the Nation eventually did contact Olsen, he stated that he was having problems with tax stamps for the cigarettes and that his partners in Miami were having problems getting licensed.
12. On February 22, 1999, Olsen wrote the Nation, stating that Wisconsin had “finally issued our license.” Complaint at paragraph 15. Olsen also stated that the supplier had been issued proper licenses, ordered tax stamps, moved the product through customs, and would begin stamping upon arrival of the stamps. Olsen represented that the Nation’s cigarette order would be filled in six (6) working days.
13. Olsen did not deliver the cigarettes within the promised period. As of the date of this Judgment’s issuance, Mr. Olsen has still not delivered any cigarettes.
14. At a March 3, 1999 meeting between representatives' of the Nation and Olsen, held on the trust lands of the Ho-Chunk Nation at the Ho-Chunk Nation Executive Facility, Olsen proposed another purchase of cigarettes by the Nation. When the Nation’s President was informed that Olsen had not complied with the January 20, 1999 Purchase Agreement, the President cancelled the Purchase Agreement and requested the return of its down payment. Olsen stated that he would return the down payment.
15. On March 3, 1999, the Nation sent Olsen a letter confirming the cancellation of the Purchase Agreement and requesting return of the down payment.
16. As of October 15, 1999, Olsen had not returned the down payment and as of the date of issuance of this Judgment has failed to make arrangements for return of the down payment.
17. On May 14, 1999, the Nation notified Olsen that it would not enter into a new agreement with him and reiterated its demand for return of the down payment.
18. That according to the Ho-Chunk Nation’s traditions and customs, once an agreement for the performance of services or production of goods is made, the parties have a duty to fulfill their obligation(s).[1]
DECISION

Introduction

In order to address the merits of a claim, a' court must first determine whether it has both personal and subject matter jurisdiction. In the case of tribal courts, this determination is complicated by the fact that federal and tribal jurisdictional standards must both be satisfied.[2] This *305 Court will begin by examining the federal standards limiting tribal court jurisdiction. It will then proceed to the jurisdictional requirements of the Ho-Chunk Nation, and finally, if both these standards are satisfied, this Court will examine the merits of the plaintiffs claims.

Federal Jurisdiction

The inquiry of federal courts into tribal jurisdiction is generally focused on either, “legislative jurisdiction[3]” or “adjudicatory jurisdiction.[4]” Legislative jurisdiction refers to the ability of a sovereign to apply its law, whereas adjudicatory jurisdiction refers to the ability of a sovereign to try an action in its courts.[5] Outside the field of Indian law, it is well established that legislative and adjudicatory jurisdiction are determined through separate standards of inquiry.[6] In the past, United States Supreme Court opinions in the field of Indian law have seemed (in practice, if not in precedent) to draw a distinction between legislative and adjudicatory jurisdiction.[7] Recent precedent, however, (in the form of Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997)) has merged these distinct concepts and applied the standards pertaining to legislative jurisdiction (articulated in Montana v. U.S., 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) and its progeny) to cases involving the scope of adjudicatory jurisdiction.[8] It is this recent precedent which, rightly or wrongly, determines this Court’s adjudicatory jurisdiction.
Montana, v. U.S. articulated the principle that “Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on Indian fee lands.” Montana, 450 U.S. at 565, 101 S.Ct. 1245. In refinement of this general principle, the Montana, Court further held that tribes may assert jurisdiction over non-members when there is a “consensual relationship with the tribe or its members through commercial dealing, contracts, leases or other arrangements,” or when the conduct of non-members “threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.” Id. Negotiations surrounding the “Purchase Agreement” as well as the defendant’s receipt of the down payment, took place on tribal trust property, a category of land which, *306 for the case at bar, is the equivalent of a reservation. See 18 U.S.C. § 1151. Additionally, the existence of the “Purchase Agreement” places this case squarely within Montana’s exception for “consensual relations.” Thus, the facts of the case at bar clearly allow this Court to properly assert jurisdiction.

Tribal Jurisdiction

As previously noted, both federal and tribal jurisdictional standards must be satisfied for this Court to adjudicate an action. The tribal standards that define this Court’s jurisdiction are articulated in the Constitution of the Ho-Chunk Nation [hereinafter HCN Constitution] and the Ho-Chunk Nation Judiciary Act of 1995 [hereinafter Judiciary Act]. Art. I, Sec. 2 of the HCN Constitution states in relevant part that “[t]he jurisdiction of the Ho-Chunk Nation shall extend to all [of its] territory ... and to any and all persons or activities therein.” HCN Const., Art. I, Sec. 2. The HCN Constitution further addresses “Jurisdiction of the Judiciary” in Art. VII, Sec 5. which states that:
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal an civil, in law or in equity, arising under the Constitution, laws, customs, and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be waiver of the Nation’s sovereign immunity.
(b) The Supreme Court shall have appellate jurisdiction over any case on appeal from the Trial Court.
HCN Const., Art. VII, Sec. 5. These grants of jurisdiction are further elaborated upon in Sec. 2 of the Ho Chunk Nation Judiciary Act of 1995, which states that:
The Ho-Chunk Nation Judiciary shall exercise jurisdiction over all matters within the power and authority of the Ho-Chunk Nation including controversies arising out of the Constitution of the Ho-Chunk Nation; laws, statutes, ordinances, resolutions and codes enacted by the Legislature; and such other matters arising under enactments of the Legislature or the customs and traditions of the Ho-Chunk Nation. This jurisdiction extends over the Nation and its territory, persons who enter' its territory, its members, and persons who interact with the Nation or its member's wherever found.
Judiciary Act, Sec. 2. This paragraph implicitly addresses both subject matter and personal jurisdiction. The first sentence addresses subject matter jurisdiction in that it speaks to the sources of law from which the Court’s power of review derives. The second sentence addresses personal jurisdiction through its indication that the assertion of subject matter jurisdiction is premised on the relationship and/or interaction of the litigants, the Ho-Chunk Nation, or its members. Both prongs of this standard must be satisfied for this Court to properly exercise jurisdiction.
In examining questions of personal jurisdiction, this Court is guided by the persuasive reasoning of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. International Shoe articulated the principle that a court may assert personal jurisdiction over a defendant not located within the territory of the forum so long as the defendant has “certain minimum contacts with [the forum] such that the maintenance of the *307 suit does not offend ‘traditional notions of fair play and substantial justice’.” The progeny of hdematioual Shoe focused on defining “fair play and substantial justice.” One line of cases elucidating this phrase premised the finding of personal jurisdiction on whether a defendant had purposely availed themselves of the chance to do business in the forum state. See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
The reasoning contained in the McGee line of cases is particularly instructive with regards to the case at bar, where the conduct in question occurred within, or transpired from, tribal territory. Negotiations for the “Purchase Agreement” took place on tribal trust land, the down payment was received on tribal trust land, and the products were to be delivered to a business located on either tribal trust land or land owned by the tribe in fee.[9] The defendant purposefully engaged in contact with the Ho-Chunk Nation for the purpose of doing business, and it is reasonable and fair for him to be haled into the Ho-Chunk Nation’s courts to answer the plaintiff’s claims.
Although the foregoing discussion establishes that this Court may assert personal jurisdiction over the defendant, the question of subject matter jurisdiction remains to be answered. For this Court to maintain subject matter jurisdiction over' an action, the controversy must arise out of “the Constitution of the Ho-Chunk Nation; laws, statutes, ordinances, resolutions and codes enacted by the Legislature; and such other matters arising under enactments of the Legislature or the customs and traditions of the Ho-Chunk Nation.” In the case at bar, the Court determined that the neither the HCN Constitution, nor the laws, statutes, codes, or ordinances of the Ho-Chunk Nation addressed the rights and responsibilities concomitant with the formation of a contract. To fully examine all potential sources of jurisdiction, the Court certified a question of law to the Ho-Chunk Nation Traditional Court,[10] inquiring as to whether Ho-Chunk Nation custom and tradition recognized agreements analogous to the modern day “contract.” [11] The Traditional Court informed the Trial Court that in the tradition and custom of the Ho-Chunk Nation, agreements between parties for the exchange of goods or services were recognized as binding, and that it was wrong for one party to keep a benefit obtained from an agreement without providing the agreed upon compensation. This legal precedent is a source of law recognized by the HCN Constitution and Judiciary Act as conferring subject matter on the Ho-Chunk Nation Trial Court.

Substantive Claims

With federal and tribal jurisdiction established, the Court now turns to the *308 merits of the plaintiffs claim. The plaintiff and defendant made an agreement whereby the defendant was to supply 48,-000 cartons of cigarettes to the defendant. Under the terms of the agreement, the plaintiff provided the defendant with an $87,120.00 down payment. This payment was made pursuant to the defendant’s assurances that he could supply the cigarettes within two weeks of receiving a Purchase Order. A Purchase Order was placed with the defendant on January 20, 1999. The plaintiff has yet tó receive the cigarettes. Under the traditions and customs of the Ho-Chunk Nation, the defendant has violated a binding agreement by retaining the benefit of the down payment without providing the agreed upon compensation. The plaintiff now seeks return of the down payment and cancellation of the Purchase Agreement.
The HCN Constitution, Art. VII, Sec. 6(a) states that “[t]he Trial Court shall have the power to make findings of fact and conclusions of law. The Trial court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.” As the Coui't has proper personal and subject matter jurisdiction over this cause of action, it now has the power to issue “all remedies in law and in equity”. THEREFORE, the Court hereby finds that the plaintiff is entitled to return of the $87,120.00 down payment as the defendant has broken an agreement, and ORDERS the defendant, as equity so requires, to return such down payment to the plaintiff. If the plaintiff does not receive remuneration within sixty (60) days of the issuance of this Judgment, it may seek attachment of the defendant’s property.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgement or Order. Otherwise, all parties have the right to appeal a final judgement or order of the Trial Court. If either party is dissatisfied with the decision of this Court, they may file a Notice of Appeal with the Ho-Chunk Supreme Court within thirty (30) calendar days from the date this Court renders such final judgment or order. The Notice of Appeal must show service was made upon the opposing party prior to its acceptance for filing by the Clerk of Court. The Notice of Appeal must ex lain the reason the appealing believes the decision appealed from is in error. All appellate pleadings to the Ho-Chunk Supreme Court must conform with the requirements established by the Ho-Chunk Supreme Court as stated in the Ho-Chunk Nation.

. The trial Court consulted the Ho-Chunk Nation Traditional Court as to the customs or traditions of the Nation. As' the Traditional Court does not formalize its decisions with a writing, no written decision of the variety one would usually expect from a court is available.

. The federal courts have asserted that issues surrounding the bounds of tribal jurisdiction are federal questions under 28 U.S.C. § 1331, *305 and therefore subject to their review. See National Fanners Union Insurance Cos. v. Crow Tribe, 471 U.S. 845, 851-55, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). It is well settled, however, that absent a situation where it is "clear” that a tribe does not have jurisdiction, litigants must first exhaust tribal remedies and allow tribal courts to determine the bounds of their own jurisdiction. See National Farmers Union Insurance, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818; Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

. This is also commonly referred to as "regulatory jurisdiction.”

. This is also commonly referred to as "judicial jurisdiction.”

. Willis L.M. Reese, Legislative Jurisdiction, 78 Colum. L.Rev. 1587, 1591 (1978).

. See Laurie Reynolds, "Jurisdiction” in Federal Indian Law: Confusion, Contradiction, and Supreme Court Precedent 27 N.M. L.Rev. 259, n. 17.

. Compare National Fanners Union, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818, Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 with Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).

. In Strate v. A-1 Contractors, the Court applied the federally imposed limits on tribal regulatory' jurisdiction to a case clearly involving only adjudicatory jurisdiction.

. Although the facts do not specify at what location the cigarettes were to be sold, all tribal business which sell cigarettes are located either on Ho-Chunk Nation fee land or land held in trust for the Ho-Chunk Nation by the U.S. government.

. The Ho-Chunk Nation Traditional Court is a body of the Ho-Chunk Nation Judicial System comprised of tribal elders. The court hears issues voluntarily brought before them and resolves conflicts based on their expertise in the customs and traditions of the Ho-Chunk Nation.

.When questions of Ho-Chunk Nation tradition or custom arise in cases before the Ho-Chunk Nation Trial or Supreme Courts, Judges and Justices may seek the input and expert opinion of the Ho-Chunk Nation Traditional Court. The procedure, is analogous to the "certification of questions of law” that often takes place between federal and state courts. See 5 Am.Jur.2d Appeal & Error § 1025.