## C & L ENTERPRISES, INC. *v.* CITIZEN BAND POTA-WATOMI INDIAN TRIBE OF OKLAHOMA

No. 00–292. Argued March 19, 2001—Decided April 30, 2001

412

*John D. Mashburn* argued the cause for petitioner. With him on the briefs was *James W. Carlton, Jr.*

*Gregory S. Coleman,* Solicitor General of Texas, argued the cause for the State of Texas et al. as *amici curiae* urging reversal. With him on the brief were *John Cornyn,* Attorney General, *Andy Taylor,* First Assistant Attorney General, *Rick Thompson,* Assistant Solicitor General, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Mark Pryor* of Arkansas, *Carla J. Stovall* of Kansas, *Mike Moore* of Mississippi, *Don Stenberg* of Nebraska, and *Mark Barnett* of South Dakota.

*Michael Minnis* argued the cause for respondent. With him on the brief were *David McCullough* and *David J. Bederman.*

*Gregory G. Garre* argued the cause for the United States as *amicus curiae* in support of respondent. With him on

the brief were *Solicitor General Waxman, Assistant Attorney General Schiffer,* and *Deputy Solicitor General Kneedler.*

JUSTICE GINSBURG delivered the opinion of the Court.

In *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.,* 523 U. S. 751 (1998), this Court held that an Indian tribe is not subject to suit in a state court—even for breach of contract involving off-reservation commercial conduct—unless "Congress has authorized the suit or the tribe has waived its immunity." *Id.,* at 754. This case concerns the impact of an arbitration agreement on a tribe's plea of suit immunity. The document on which the case centers is a standard form construction contract signed by the parties to govern the installation of a foam roof on a building, the First Oklahoma Bank, in Shawnee, Oklahoma. The building and land are owned by an Indian Tribe, the Citizen Potawatomi Nation (Tribe). The building is commercial, and the land is off-reservation, nontrust property. The form contract, which was proposed by the Tribe and accepted by the contractor, C & L Enterprises, Inc. (C & L), contains an arbitration clause.

The question presented is whether the Tribe waived its immunity from suit in state court when it expressly agreed to arbitrate disputes with C & L relating to the contract, to the governance of Oklahoma law, and to the enforcement of arbitral awards "in any court having jurisdiction thereof." We hold that, by the clear import of the arbitration clause, the Tribe is amenable to a state-court suit to enforce an arbitral award in favor of contractor C & L.

I

Respondent Citizen Potawatomi Nation is a federally recognized Indian Tribe. In 1993, it entered into a contract with petitioner C & L for the installation of a roof on a Shawnee, Oklahoma, building owned by the Tribe. The building,

which housed the First Oklahoma Bank, is not on the Tribe's reservation or on land held by the Federal Government in trust for the Tribe.

The contract at issue is a standard form agreement copyrighted by the American Institute of Architects. The Tribe proposed the contract; details not set out in the form were inserted by the Tribe and its architect. Two provisions of the contract are key to this case. First, the contract contains an arbitration clause:

> "All claims or disputes between the Contractor [C & L] and the Owner [the Tribe] arising out of or relating to the Contract, or the breach thereof, shall be decided by arbitration in accordance with the Construction [I]ndustry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise . . . . The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." App. to Pet. for Cert. 46.

The American Arbitration Association Rules to which the clause refers provide: "Parties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." American Arbitration Association, Construction Industry Dispute Resolution Procedures, R–48(c) (Sept. 1, 2000).

Second, the contract includes a choice-of-law clause that reads: "The contract shall be governed by the law of the place where the Project is located." App. to Pet. for Cert. 56. Oklahoma has adopted a Uniform Arbitration Act, which instructs that "[t]he making of an agreement . . . providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this act and to enter judgment on an award thereunder." Okla. Stat., Tit. 15,

§ 802.B (1993). The Act defines "court" as "any court of competent jurisdiction of this state." *Ibid.*

After execution of the contract but before C & L commenced performance, the Tribe decided to change the roofing material from foam (the material specified in the contract) to rubber guard. The Tribe solicited new bids and retained another company to install the roof. C & L, claiming that the Tribe had dishonored the contract, submitted an arbitration demand. The Tribe asserted sovereign immunity and declined to participate in the arbitration proceeding. It notified the arbitrator, however, that it had several substantive defenses to C & L's claim. On consideration of C & L's evidence, the arbitrator rendered an award in favor of C & L for $25,400 in damages (close to 30% of the contract price), plus attorney's fees and costs.

Several weeks later, C & L filed suit to enforce the arbitration award in the District Court of Oklahoma County, a state court of general, first instance, jurisdiction. The Tribe appeared specially for the limited purpose of moving to dismiss the action on the ground that the Tribe was immune from suit. The District Court denied the motion and entered a judgment confirming the award.

The Oklahoma Court of Civil Appeals affirmed, holding that the Tribe lacked immunity because the contract giving rise to the suit was "between an Indian tribe and a non-Indian" and was "executed outside of Indian Country." App. to Pet. for Cert. 14 (citation omitted). The Oklahoma Supreme Court denied review, and the Tribe petitioned for certiorari in this Court.

While the Tribe's petition was pending here, the Court decided *Kiowa,* holding: "Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation." 523 U. S., at 760. *Kiowa* reconfirmed: "[A]n Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."

*Id.*, at 754. Thereafter, we granted the Tribe's petition in this case, vacated the judgment of the Court of Civil Appeals, and remanded for reconsideration in light of *Kiowa.* 524 U. S. 901 (1998).

On remand, the Court of Civil Appeals changed course. It held that, under *Kiowa,* the Tribe here was immune from suit on its contract with C & L, despite the contract's off-reservation subject matter. App. to Pet. for Cert. 4–5. The court then addressed whether the Tribe had waived its immunity. "The agreement of [the] Tribe to arbitration, and the contract language regarding enforcement in courts having jurisdiction," the court observed, "seem to indicate a willingness on [the] Tribe's part to expose itself to suit on the contract." *Id.,* at 7. But, the court quickly added, "the leap from that willingness to a waiver of immunity is one based on implication, not an unequivocal expression." *Ibid.* Concluding that the Tribe had not waived its suit immunity with the requisite clarity, the appeals court instructed the trial court to dismiss the case. The Oklahoma Supreme Court denied C & L's petition for review.

Conflicting with the Oklahoma Court of Civil Appeals' current decision, several state and federal courts have held that an arbitration clause, kin to the one now before us, expressly waives tribal immunity from a suit arising out of the contract. See *Sokaogon Gaming Enterprise Corp.* v. *Tushie-Montgomery Associates, Inc.,* 86 F. 3d 656, 661 (CA7 1996) (clause requiring arbitration of contractual disputes and authorizing entry of judgment upon arbitral award "in any court having jurisdiction thereof" expressly waived Tribe's immunity); *Native Village of Eyak* v. *GC Contractors,* 658 P. 2d 756 (Alaska 1983) (same); *Val/Del, Inc.* v. *Superior Court,* 145 Ariz. 558, 703 P. 2d 502 (Ct. App. 1985) (same). But cf. *Pan American Co.* v. *Sycuan Band of Mission Indians,* 884 F. 2d 416 (CA9 1989) (clause requiring arbitration of contractual disputes did not expressly waive Tribe's immu-

nity). We granted certiorari to resolve this conflict, 531 U. S. 956 (2000), and now reverse.

## II

*Kiowa,* in which we reaffirmed the doctrine of tribal immunity, involved an off-reservation, commercial agreement (a stock purchase) by a federally recognized Tribe. The Tribe signed a promissory note agreeing to pay the seller $285,000 plus interest. The note recited: "Nothing in this Note subjects or limits the sovereign rights of the Kiowa Tribe of Oklahoma." 523 U. S., at 753–754. The Tribe defaulted, the seller sued on the note in state court, and the Tribe asserted sovereign immunity. We upheld the plea. Tribal immunity, we ruled in *Kiowa,* extends to suits on off-reservation commercial contracts. *Id.,* at 754–760. The Kiowa Tribe was immune from suit for defaulting on the promissory note, we held, because "Congress ha[d] not abrogated [the Tribe's] immunity, nor ha[d] petitioner waived it." *Id.,* at 760.

Like *Kiowa,* this case arises out of the breach of a commercial, off-reservation contract by a federally recognized Indian Tribe. The petitioning contractor, C & L, does not contend that Congress has abrogated tribal immunity in this setting. The question presented is whether the Tribe has waived its immunity.

To abrogate tribal immunity, Congress must "unequivocally" express that purpose. *Santa Clara Pueblo* v. *Martinez,* 436 U. S. 49, 58 (1978) (citing *United States* v. *Testan,* 424 U. S. 392, 399 (1976)). Similarly, to relinquish its immunity, a tribe's waiver must be "clear." *Oklahoma Tax Comm'n* v. *Citizen Band Potawatomi Tribe of Okla.,* 498 U. S. 505, 509 (1991). We are satisfied that the Tribe in this case has waived, with the requisite clarity, immunity from the suit C & L brought to enforce its arbitration award.

The construction contract's provision for arbitration and related prescriptions lead us to this conclusion. The arbitra-

tion clause requires resolution of all contract-related disputes between C & L and the Tribe by binding arbitration; ensuing arbitral awards may be reduced to judgment "in accordance with applicable law in any court having jurisdiction thereof." App. to Pet. for Cert. 46. For governance of arbitral proceedings, the arbitration clause specifies American Arbitration Association Rules for the construction industry, *ibid.*, and under those Rules, "the arbitration award may be entered in any federal or state court having jurisdiction thereof," American Arbitration Association, Construction Industry Dispute Resolution Procedures, R–48(c) (Sept. 1, 2000).

The contract's choice-of-law clause makes it plain enough that a "court having jurisdiction" to enforce the award in question is the Oklahoma state court in which C & L filed suit. By selecting Oklahoma law ("the law of the place where the Project is located") to govern the contract, App. to Pet. for Cert. 56, the parties have effectively consented to confirmation of the award "in accordance with" the Oklahoma Uniform Arbitration Act, *id.*, at 46 ("judgment may be entered upon [the arbitration award] in accordance with applicable law"); Okla. Stat., Tit. 15, § 802.A (1993) ("This act shall apply to . . . a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties.").[1]

The Uniform Act in force in Oklahoma prescribes that, when "an agreement . . . provid[es] for arbitration in this state," *i. e.*, in Oklahoma, jurisdiction to enforce the agreement vests in "any court of competent jurisdiction of this

---

[1] The United States, as *amicus* supporting the Tribe, urges us to remain within the "four corners of the contract" and refrain from reliance on "secondary sources." Brief for United States as *Amicus Curiae* 19, and n. 7. The American Arbitration Association Rules and the Uniform Arbitration Act, however, are not secondary interpretive aides that supplement our reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself.

state." §802.B. On any sensible reading of the Act, the District Court of Oklahoma County, a local court of general jurisdiction, fits that statutory description.[2]

In sum, the Tribe agreed, by express contract, to adhere to certain dispute resolution procedures. In fact, the Tribe itself tendered the contract calling for those procedures. The regime to which the Tribe subscribed includes entry of judgment upon an arbitration award in accordance with the Oklahoma Uniform Arbitration Act. That Act concerns arbitration in Oklahoma and correspondingly designates as enforcement forums "court[s] of competent jurisdiction of [Oklahoma]." *Ibid.* C & L selected for its enforcement suit just such a forum. In a case involving an arbitration clause essentially indistinguishable from the one to which the Tribe and C & L agreed, the Seventh Circuit stated:

> "There is nothing ambiguous about th[e] language [of the arbitration clause]. The tribe agrees to submit disputes arising under the contract to arbitration, to be bound by the arbitration award, and to have its submission and the award enforced in a court of law.
>
> . . . "The [tribal immunity] waiver . . . is implicit rather than explicit only if a waiver of sovereign immunity, to be deemed explicit, must use the words 'sovereign immunity.' No case has ever held that." *Sokaogon,* 86 F. 3d, at 659–660.

---

[2] The United States argues that the Oklahoma Uniform Arbitration Act is inapplicable in this case because it does not reach all arbitrations properly held in Oklahoma, but only those in which the agreement explicitly "provide[s] for arbitration in [Oklahoma]." Tr. of Oral Arg. 47–48 (referring to §802.B). No Oklahoma authority is cited for this constricted reading of an Act that expressly "appl[ies] to . . . a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties." §802.A. We decline to attribute to the Oklahoma lawmakers and interpreters a construction that so severely shrinks the Act's domain.

That cogent observation holds as well for the case we confront.[3]

The Tribe strenuously urges, however, that an arbitration clause simply "is not a waiver of immunity from suit." Brief for Respondent 13. The phrase in the clause providing for enforcement of arbitration awards "in any court having jurisdiction thereof," the Tribe maintains, "begs the question of what court has jurisdiction." *Id.*, at 22. As counsel for the Tribe clarified at oral argument, the Tribe's answer is "no court," on earth or even on the moon. Tr. of Oral Arg. 32–33. No court—federal, state, or even tribal—has jurisdiction over C & L's suit, the Tribe insists, because it has not expressly waived its sovereign immunity in any judicial forum. *Ibid.;* cf. *Sokaogon,* 86 F. 3d, at 660 (facing a similar argument, Seventh Circuit gleaned that counsel meant only a statement to this effect will do: "The tribe will not assert the defense of sovereign immunity if sued for breach of contract.").[4]

---

[3] Instructive here is the law governing waivers of immunity by foreign sovereigns. Cf. *Kiowa Tribe of Okla.* v. *Manufacturing Technologies, Inc.,* 523 U. S. 751, 759 (1998) ("In considering Congress' role in reforming tribal immunity, we find instructive the problems of sovereign immunity for foreign countries."). "Under the law of the United States . . . an agreement to arbitrate is a waiver of immunity from jurisdiction in . . . an action to enforce an arbitral award rendered pursuant to the agreement . . . ." Restatement (Third) of the Foreign Relations Law of the United States § 456(2)(b)(ii) (1987).

[4] Relying on our state sovereign immunity jurisprudence, the United States maintains that "courts must be especially reluctant to construe ambiguous expressions as consent by a Tribe to be sued in state court." Brief for United States as *Amicus Curiae* 23; see also *id.*, at 25 (arguing that a State's generalized consent to suit, without an express selection of the forum in which suit may proceed, "should be construed narrowly as the State's consent to be sued in its *own* courts of competent jurisdiction, and not its consent to be subjected to suits in *another* sovereign's courts") (citing, *e. g., Kennecott Copper Corp.* v. *State Tax Comm'n,* 327 U. S. 573 (1946) (State statute authorizing suits against State in "any court of competent jurisdiction" did not waive State's immunity from suit in federal court)). But in this case, as we explained *supra,* at 419–420, the Tribe has plainly consented to suit in Oklahoma state court. We therefore have

Instead of waiving suit immunity in any court, the Tribe argues, the arbitration clause waives simply and only the parties' rights to a court trial of contractual disputes; under the clause, the Tribe recognizes, the parties must instead arbitrate. Brief for Respondent 21 ("An arbitration clause is what it is: a clause submitting contractual disputes to arbitration."). The clause no doubt memorializes the Tribe's commitment to adhere to the contract's dispute resolution regime. That regime has a real world objective; it is not designed for regulation of a game lacking practical consequences. And to the real world end, the contract specifically authorizes judicial enforcement of the resolution arrived at through arbitration. See *Eyak*, 658 P. 2d, at 760 ("[W]e believe it is clear that any dispute arising from a contract cannot be resolved by arbitration, as specified in the contract, if one of the parties intends to assert the defense of sovereign immunity. . . . The arbitration clause . . . would be meaningless if it did not constitute a waiver of whatever immunity [the Tribe] possessed."); *Val/Del*, 145 Ariz., at 565, 703 P. 2d, at 509 (because the Tribe has "agree[d] that any dispute would be arbitrated and the result entered as a judgment in a court of competent jurisdiction, we find that there was an express waiver of the tribe's sovereign immunity"); cf. *Rosebud Sioux Tribe* v. *Val-U Constr. Co.*, 50 F. 3d 560, 562 (CA8 1995) (agreement to arbitrate contractual disputes did not contain provision for court enforcement; court nonetheless observed that "disputes could not be resolved by arbitration if one party intended to assert sovereign immunity as a defense").[5]

---

no occasion to decide whether parallel principles govern state and tribal waivers of immunity.

[5] The Tribe's apparent concession—that the arbitration clause embodies the parties' agreement to resolve disputes through arbitration—is not altogether consistent with the Tribe's refusal to participate in the arbitration proceedings.

The Tribe also asserts that a form contract, designed principally for private parties who have no immunity to waive, cannot establish a clear waiver of tribal suit immunity. Brief for Respondent 20; Tr. of Oral Arg. 27–28. In appropriate cases, we apply "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U. S. 52, 62 (1995) (construing form contract containing arbitration clause). That rule, however, is inapposite here. The contract, as we have explained, is not ambiguous. Nor did the Tribe find itself holding the short end of an adhesion contract stick: The Tribe proposed and prepared the contract; C & L foisted no form on a quiescent Tribe. Cf. *United States* v. *Bankers Ins. Co.*, 245 F. 3d 315, 319–320 (CA4 2001) (where federal agency prepared agreement, including its arbitration provision, sovereign immunity does not shield the agency from engaging in the arbitration process).[6]

\*　　\*　　\*

For the reasons stated, we conclude that under the agreement the Tribe proposed and signed, the Tribe clearly consented to arbitration and to the enforcement of arbitral awards in Oklahoma state court; the Tribe thereby waived its sovereign immunity from C & L's suit. The judgment of the Oklahoma Court of Civil Appeals is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[6] The Tribe alternatively urges affirmance on the grounds that the contract is void under 25 U. S. C. §81 and that the members of the Tribe who executed the contract lacked the authority to do so on the Tribe's behalf. These issues were not aired in the Oklahoma courts and are not within the scope of the questions on which we granted review. We therefore decline to address them.