*382 ORDER
(Lack of Subject Matter Jurisdiction)
TODD R. MATHA, Associate Judge.
INTRODUCTION
The Court must determine whether to grant the November 7, 2000 Motion to Dismiss filed by the defendant, Ruka & Associates, and joined in by the co-defendant, B & K Builders, Inc. The plaintiff, Ho-Chunk Nation, has failed to substantiate a proper delegation of contractual authority to the signatories of the contracts in question. Therefore, the contracts provide no binding law for the Court to apply, resulting in a lack of subject matter jurisdiction.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail in its Order (Insufficient Evidence), CV 00-91 (HCN Tr. Ct., April 10, 2001). For purposes of this decision, the Court notes that the plaintiff complied with the Court’s order to file additional historical evidence through submission of the April 17, 2001 Plaintiffs Response to Order (Insufficient Evidence). See Id. at 10. Thereafter, the Court entered its May 9, 2001 Order (Notice), informing the parties of its intent to consider the instant case in light of recent United States Supreme Court caselaw.
APPLICABLE LAW
HO-CHUNK RULES OF CIVIL PROCEDURE
Rule 3. Complaints.
(A) General. A civil action begins by filing a written Complaint with the clerk of court. The Complaint shall contain short, plain statements of the grounds upon which the court’s jurisdiction depends; the facts and circumstances giving *383 rise to the action; and a demand for any and all relief the party wants awarded. Relief should include, but is not limited to the dollar amount that the party is requesting. The Complaint must contain the full names, addresses and telephone numbers of all parties and any counsel and shall be signed by the filing party and his/her counsel, if any. The Court shall have jurisdiction from the time the Complaint is filed.
Rule 56. Dismissal, of Actions.
(B)Involuntary Dismissal. At any other time in the action, a party must file a Motion to Dismiss. A Motion to Dismiss may be granted (1) if there has been no Order or other action in a case for six (6) months, or, (2) if a party substantially fails to comply with these rules, or, (3) if a pai'ty substantially fails to comply with an order of the Court, or, (4) if a party fails to establish the right to relief following presentation of all evidence at trial. An Order to dismiss a claim is a dismissal with prejudice.
Rule 58. Amendment to or Relief from Judgement or Order.
(A) Relief from Judgement. A Motion to Amend or for relief from judgement, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgement. The Motion must be based on an error or irregularity which prevented a party from receiving a fair trial or a substantial legal error which affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgement, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgement accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgement, the time for initiating an appeal commences upon entry of the amended judgement. If the Court denies a motion filed under this rule, the time for initiating an appeal from the judgement commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the entry of judgement, the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgement commences in accordance with the Rules of Appellate Procedure.
(C) Erratum Order or Reissuance of Judgement. Clerical errors in a court record, including the Judgement or Order, may be corrected by the Court at any time.
(D) Grounds for Relief. The Court may grant relief from judgements or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; or (2) fraud, misrepresentation or serious misconduct of another party to the action; or (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(1)(a) or (b); did not have proper service and did not appear in the action; or (4) the judgement has been satisfied, released, discharged or is without effect due to a judgement earlier in time.
Rule 61. Appeals.
Any final Judgement or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of *384 a final Judgement or Trial Court Order must follow the HCN Rules of Appellate Procedure.
CONSTITUTION AND BYLAWS 01 THE WISCONSIN WINNEBAGO TRIBE (approved by the Asst. Sec. of the Int. on Mar. 19, 1963)
CONSTITUTION
Article IV — Organization of the Governing Body
Section 2. The business committee shall select from within the committee a vice chairman, and may select from within or without the committee a secretary and a treasurer. When selected from without the committee, the secretary and treasurer shall have no vote in the proceedings of the committee.
Article X — Powers of the Business Committee
Section 1. The business committee of the Wisconsin Winnebago Tribe shall have the following powers, subject to any limitation imposed by the Constitution or the Statutes of the United States, and subject further to all expressed restrictions upon such powers contained in this constitution and bylaws.
(a) To consult, negotiate, contract, and conclude agreements on behalf of the tribe with Federal, State or local governments and other corporations, associations, partnerships, and other organizations or individuals on all matters within the power of the tribal business committee expressed herein.
2 Section 2. To delegate by ordinance or resolution to tribal officials, district councils, or associations any of the foregoing powers of the business committee reserving the right to review any action taken by virtue of such delegated power.
BYLAWS
Article I — Duties of Officers
Section 1. The chairman of the business committee shall preside over all meetings of the business committee and exercise any authority specifically delegated to him as provided in Article X, Section 2, of this constitution. As chairman of the business committee and the executive committee, he shall at all times have general supervision of the affairs of the business committee, executive committee and the tribe. He shall call all meeting of the general council required by this constitution and bylaws. He shall preside at all general council meetings. In the event the treasurer is incapacitated, the chairman shall pay out money when authorized by resolution of the business committee. He shall vote only in the case of a tie.
Section 3. The secretary shall keep an accurate record of all minutes, resolutions, and ordinances enacted by the business committee and general council meetings and shall take other actions in accordance with established procedures. In addition, the secretary shall be responsible for all files, records, and correspondences of the business committee, the general council and the executive committee. The secretary shall transmit copies of the minutes of the general council and business committee meetings to the Commissioner of Indian Affairs or his authorized representative. The secretary shall be responsible for the preparation of all notices required by this constitution and bylaws.
CONSTITUTION OF THE HO-CHUNK NATION (approved by the Asst. Sec. of the Int. on Nov. 1,1994)
Article III — Organization of the Government
Section 1. Sovereignty. The Ho-Chunk Nation possesses inherent sovereign pow *385 ers by virtue of self-government and democracy.
Section 3. Separation of Functions. No branch of government shall exercise the powers or functions delegated to another branch.
Article IV — General Council
Section 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII. Article V — Legislature
Section 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(i) To negotiate and enter into treaties, compacts, contracts, and agreements with other governments, organizations, or individuals;
Article VI — Executive
Section 1. Composition of the Executive.
(a) The Executive power of the Ho-Chunk Nation shall be vested in the President of the Ho-Chunk Nation.
Section 2. Powers of the President. The President shall have the power:
(a) To execute and administer the laws of the Ho-Chunk Nation;
(k) To represent the Ho-Chunk Nation on all matters that concern its interests and welfare;
(l) To execute, administer, and enforce the laws of the Ho-Chunk Nation necessary to exercise all powers delegated by the General Council and the Legislature, including but not limited to the foregoing list of powers.
Article VII — Judiciary
Section 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Section 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Article XIV — Savings Clause
All actions of the Nation, formerly known as the Wisconsin Winnebago Tribe, taken before the effective date of this Constitution, including elections and terms of office, shall remain in full force and effect to the extent that they are consistent with this Constitution.
WISCONS1N STATUTES
Chapter 788 — Arbitration
Sec. 788.09. Court confirmation award, time limit.
At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made *386 for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected under s. 788.10 or 788.11. Notice in writing of the application shall be served upon the adverse party or the adverse party’s attorney 5 days before the hearing thereof.
FINDINGS OF FACT
1. The Court alerted the plaintiff to its need to furnish the Court with historical evidence pertaining to the execution of contracts with the defendants so as to guide the Court’s application and interpretation of law. See generally Order (Insufficient Evidence).
2. The plaintiff timely complied with the Court’s Order, providing documentation within its April 17, 2001 Plaintiffs Response to Order (Insufficient Evidence).
3. On March 19, 1963, the Assistant Secretary of the Interior, John A. Carver, Jr., approved the Constitution and Bylaws of the Wisconsin Winnebago Tribe [hereinafter Winn. Constitution and/or Bylaws],
4. The terms “sovereign,” “sovereignty,” or “sovereign immunity” appear nowhere within the WINN. CONSTITUTION AND BYLAWS, and such document entrusts no specific governmental branch with the power to waive the tribe’s implicit sovereign immunity from suit.
5. On September 21, 1994, the Wisconsin Winnebago Business Committee expressed its consent to enter into the Agreement betiveen Owner and Architect [hereinafter Architectural Agreement ]with Ruka & Associates as indicated within the following category of business:
Legal Department — MOTION was made by Douglas Greengrass to authorize the Vice Chairman to sign WI Petroleum (unbranded fuel) contract for the White Tail Crossing Convenience Store — BRF (located by Majestic Pines). MOTION DIES FOR LACK OF A SECOND, MOTION was made by Alvin Cloud to authorize the Chairman or Vice Chairman to sign the WI Petroleum contract after Legal review. Seconded by James Greendeer. 6-0-1 (Dallas) Motion carried. MOTION was made by James Greendeer to approve the contract with Mid State Associates to do the environmental assessment of the Casey Property for $17,500.00. Seconded by Alvin Cloud. 7-0-0 Motion carried. MOTION was made by Ona Garvin that the Ruka Associates (sic) contract for Day Care Center be at the hourly rate instead of 10% and that we accept that contract. Seconded by Alvin Cloud. 7-0-0 Motion carried. (NOTE: The S bid process had already been conducted for this project). MOTION was made by James Greendeer that the Mid State Associates work with Gerke, the contractor that the Tribe has a contract with to be signed by the Tribal Vice Chairman after Legal review as their parking lot for 600 cars. Seconded by Alvin Cloud. 7-0-0 Motion carried.
Plaintiffs Response to Order (Insufficient Evidence), Exhibit 1 (emphasis, italics, added).
6. On October 24, 1994, Chairperson of the Wisconsin Winnebago Tribe of Indians, JoAnn Jones, Treasurer of the Wisconsin Winnebago Tribe of Indians, Pamela M. Matter n/k/a/ Wilber, and Owner of Ruka & Associates, Larry Ruka, signed the Architectural Agreement. Complaint, CV 00-91 (Sept. 20, 2000), Exhibit 1. Ruka & Associates is located at 10520 W. Bluemound Rd., Wauwatosa, WI 53226. Architectural Agreement at 1.
7. The Architectural Agreement contained the following arbitration provision:

*387
ARBITRATION:

1. Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to the Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.
2. Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.
3. The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
Id. at 3-4.
8. The Architectural Agreement contained the following choice of law provision:

MISCELLANEOUS PROVISIONS:

1. Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect, including State of Wisconsin, Federal Courts. TERO disputes shall be decided in Tribal Courts.
Id. at 4.
9. On November 1, 1994, the Assistant Secretary of the Interior, Ada E. Deer, approved the Constitution of the Ho-Chunk Nation [hereinafter HCN Constitution],
10. The HCN Constitution entrusts the Legislature with the power to waive the sovereign immunity of the Ho-Chunk Nation if articulated in express terms. HCN Constitution, Art. XII § 1.
11. On August 11, 1995, Vice President of the Ho-Chunk Nation, Wilfred Cleveland, and President of B & K Builders, Inc., Kenneth Staab, signed the Standard Form of Agreement Between Owner and Contractor [hereinafter Construction. Contract], Complaint, Exhibit 2.
12. The Construction Contract adopted the 1987 Edition of the AIA (“American Institute of Architects”) Document A201, General Conditions of the Contract for Construction [hereinafter ALA Conditions] by reference. Construction Contract at 1; Art. I; Art. IX § 1.2.
13. The Construction Contract incorporated the attached Construction Account Agreement [hereinafter Account Agreement], Bid Form dated June 15, 1995 and Exhibit A: Jurisdiction; Ho-Chunk Nation Limited Waiver of Sovereign Immunity [hereinafter Limited Waiver] as parts of the contract documents. Construction Contract, Art. IX § 1.7.
14. On August 11, 1995, President of the Ho-Chunk Nation, JoAnn Jones, and President of B & K Builders, Inc., Kenneth Staab, signed the Account Agreement. Complaint, Exhibit 3.
15. The Account Agreement remained in effect until “the occurrence of the final payment under the Construction Contract.” Account Agreement, Para. 6. Both *388 parties recognized that the Ho-Chunk Nation had disbursed all monies to B & K Builders, Inc. from the construction funding bank account. Courtroom Log/Minutes, CV 00-91 (Scheduling Conference/Motion Hearing, Dec. 13, 2000) at 10; see also Account Agreement, Para. 1.
16. The Limited Waiver provides in relevant part:
The Ho-Chunk Nation expressly waives in a limited manner its immunity from suit and consents to be sued in the Court of the Ho-Chunk Nation. This waiver includes the waiver of sovereign immunity against the enforcement, execution upon, and obtaining satisfaction or any resulting judgment. The Ho-Chunk Nation waives sovereign immunity to the extent, and only to the extent, provided in ... the Contract Documents, and this Agreement. This waiver is given only to B & K Builders, Inc. as a party to this Agreement, is not assignable, nor to be construed as any waiver for any other reasons not mentioned herein....
Complaint, Exhibit 3.
DECISION
The HCN Constitution demarcates the spheres occupied by each coequal branch of government. HCN Constitution, Art. Ill § 3, ART. IV § 2. For purposes of the instant case, the Legislature possesses the authority to make laws, Id., Art. IV § 2, Art. V § 2(a), and negotiate and enter into contracts, Id., Art. V § 2(i); the President of the Ho-Chunk Nation [hereinafter President] possesses the authority to execute, administer and enforce the laws, Id., Art. IV § 2, Art. VI § 2(a), (l), represent the Ho-Chunk Nation on matters that concern its interests and welfare, Id., Art. VI § 2(k), and exercise those powers delegated by the Legislature, Id., Art. VI § 2(1); and the Ho-Chunk Nation Judiciary possesses the authority to interpret and apply the laws. Id., Art. IV § 2, Art. VII §§ 4, 5(a). The predecessor Winn. Constitution and Bylaws created somewhat similar spheres of authority for the executive and legislative bodies as structured within the prior form of government. The Wisconsin Winnebago Business Committee [hereinafter WWBC] possessed the authority to negotiate, contract and conclude agreements, Winn. Constitution, Art. X § 1(a), and the Chairperson of the WWBC and other tribal officials possessed the authority to exercise those powers delegated by the WWBC. Id., Art. IV § 4, Art. X § 2, Winn. Bylaws, Art. I § 1.
In order for the Court to perform its constitutional function of interpreting and applying the law, there obviously must exist some form of law over which the Court may entertain subject matter jurisdiction in the first instance. The Court may exercise subject matter jurisdiction over civil cases or controversies “arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation .... ” HCN Constitution, Art. VII § 5(a). The HCN Constitution generally identifies the foregoing sources as law which the Court may endeavor to interpret and apply. The reference to “laws” within the constitutional provision incorporates those actions of the Legislature deserved of such import and arising from a legitimate exercise of legislative power.[1] *389 The Court may not function in the absence of law nor independently create law lest it improperly exercise a legislative function. Ho-Chunk Nation v. Harry Steindorf and Jess Steindorf, CV 99-82 (HCN Tr. Ct., Feb. 11, 2000) aff'd SU 00-04 (HCN S.Ct., Sept. 29, 2000). In this regard, the Court must establish the presence of subject matter jurisdiction in each case as a failure to do so must inevitably result in a reversal of its decision. The Court, therefore, will independently assess the Architectural Agreement and Construction Contract, and determine the existence of law to guide the Court’s interpretation in each instance.
I. Did the WWBC confer authority upon the Chairperson and Treasurer of the WWBC to enter into the Architectural Agreement with Euka & Associates, thereby creating law in the form of the resulting contract? If so, did the WWBC properly waive the implicit sovereign immunity from suit of the Wisconsin Winnebago Tribe of Indians through approval of the arbitration and choice of law provisions contained in the Architectural Agreement?
The Winn. Constitution granted the authority to negotiate, contract and conclude agreements to the WWBC. Winn. Constitution, Aet. X § 1(a). The WWBC, in turn, could delegate this authority to the Chairperson of the WWBC and/or tribal officials, including the Treasurer. Id., Art. IV §§ 2, 4, ART. X § 2, Winn. Bylaws, Art. I § 1. The plaintiff presented WWBC meeting minutes as evidence of this delegation. However, the minutes do not indicate a clear intent to delegate authority, simply expressing that the WWBC accept the Architectuml Agreement. This expression of consent appears within a category of business referred to as “Legal Department,” and otherwise includes an explicit delegation of authority to the Chairperson of the WWBC to execute contracts. Specifically, a “motion was made by Alvin Cloud to authorize the Chairman or Vice Chairman to sign the WI Petroleum contract after Legal review.” Plaintiffs Response to Order (Insufficient Evidence), Exhibit 1 (emphasis omitted).
The Court does not deem that the plaintiff now advocates that the Court assume delegations of legislative authority in the absence of proper indication to that effect. Invariably, the Ho-Chunk Nation would only seek enforcement of those agreements which it deemed beneficial and erect strong defenses against the remainder. Such a scheme is fraught with potential for abuse, and the Court shall not enable this type of post, hoc discretionary recognition. Moreover, neither the Chairperson nor Treasurer of the WWBC could execute the Architectural Agreement without a delegation from the WWBC in the form of either an ordinance or resolution. See Winn. Constitution, Art. IV § 4, Art. X § 2, Winn. Bylaws, Art. I § 1. The plaintiff has not provided any such document(s), and should be capable of doing so given the then Secretary’s obligation to “keep an accurate record of all minutes, resolutions, and ordinances enacted by the business committee....” Winn. Bylaws, Art. I § 3.
Due to the improper exercise of a legislative function reserved to the WWBC, the Court has no eontemporane *390 ous law to apply to the current set of facts and circumstances. If the WWBC would have delegated the ability to conclude agreements to the Chairperson or Treasurer of the WWBC, then the Court could have consulted the terms of the Architectural Agreement and Wisconsin law by means of the choice of law provision. Architecture Agreement at 4. The Court is not obliged to address the waiver of sovereign immunity issue since it concludes that the Architecture Agreement was improperly executed, thereby depriving the Court of subject matter jurisdiction. However, assuming arguendo that the signatories possessed the properly delegated authority to enter into the Architectural Agreement, the defendant would still prevail on its Motion to Dismiss.
The similarities existing between the Architectural Agreement and contract documents analyzed in a recent opinion of the United States Supreme Court [hereinafter U.S. Supreme Court] make such judgment controlling. See C & L Enter., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 632 U.S. 411, 121 S.Ct. 1589, 1590-92, 149 L.Ed.2d 623 (2001). In Potawatomi, the U.S. Supreme Court found that an arbitration clause represented a “clear*” waiver of tribal sovereign immunity from suit, Id. at 1594-96, based upon the following factors: 1) the arbitration clause contained a general enforcement provision, Id. at 1592-94, 2) an incorporated contract document contained an enforcement provision with a designation of judicial forum, Id., 3) a choice of law provision referenced the applicable law of the place of the construction site, Id., 4) the applicable law designated state courts for enforcement of arbitral awards, Id,, and 5) the authority of the official(s) executing the contract was not an issue of concern. Id. at 1597, n. 6.
Likewise, the Architectural Agreement includes an arbitration clause with a general enforcement provision, indicating that “judgment may be entered upon [the arbi-tral award] in accordance with applicable law in any court having jurisdiction thereof.” Architectural Agreement at 4. The Architectural Agreement then identifies the applicable law as “the law of the principal place of business of the Architect....” Id. at 4. Wisconsin law provides that “any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award.” Wis. Stat. § 788.09. Therefore, the plaintiff would need to arbitrate the contractual dispute as the Architectural Agreement contains a clear waiver of sovereign immunity. The waiver need not appear in express terms since the Winn. Constitution articulated no such requirement. But see HCN Constitution, Art. XII § 1.
II. Did the Vice President of the Ho-Chunk Nation possess the authority to enter into the Construction Contract with B & K Builders, Inc. by means of the Savings Clause of the HCN Constitution?
The Court earlier speculated that the plaintiff could possibly establish a proper delegation of contractual signature authority as preserved by the Savings Clause, stating:
As a preliminary matter, the Court requires evidence indicating that the [WWBC] delegated authority to Chairperson JoAnn Jones to enter into the [Architecture Agreement] with Ruka & Associates. The Court also requires evidence indicating whether or not such conferral of authority survived the adoption of the [HCN] CONSTITUTION via the Savings Clause or whether the Ho-Chunk Nation formally renewed the delegation to its representatives,
*391 President JoAnn Jones and Vice President Wilfred Cleveland, pursuant to [ JLegislature resolution or motion.
Order (Insufficient Evidence) at 9 (internal citations omitted). The plaintiff responded by asserting that “fa]ll conferral of authority survived the adoption of the [HCN] Constitution via the Savings Clause.” Plaintiffs Response to Order (Insufficient Evidence) at 1.
To begin, the plaintiff cannot utilize the Savings Clause to grant full force and effect to a delegation of contractual power that never properly occurred, and, therefore, did not represent an action of the Ho-Chunk Nation or its predecessor, the Wisconsin Winnebago Tribe of Indians. See HCN Constitution, Art. XIV. Furthermore, any conferral of authority to the Chairperson or Vice-Chairperson of the WWBC would have certainly needed to include within its scope the ability to execute the agreement with the contractor of the project. The ineffective September 21, 1994 motion did not contemplate an approval of a certain contractor, but merely indicated “that the Ruka Associates (sic) contract for Day Care Center be at the hourly rate instead of 10% and that we accept that contract.” Plaintiffs Response to Order (Insufficient Evidence), Exhibit 1. The Vice President of the Ho-Chunk Nation signed the Construction Contract over nine (9) months after the signing of the Architectural Agreement, and it remains unknown as to whether the WWBC even considered contracting with B & K Builders, Inc. nearly eleven (11) months earlier. In fact, B & K Builders, Inc. did not submit its Bid Form until June 15, 1995.
Therefore, the plaintiff cannot sustain the validity of the Construction Contract by means of the Savings Clause. The Court consequently lacks subject matter jurisdiction over the contractual dispute. The WWBC did not delegate to the Vice President of the Ho-Chunk Nation the authority to adopt law to govern the Construction Contract, namely the AIA Conditions and the Limited Waiver.
III. Does Ho-Chunk Nation custom and tradition, in the absence of law adopted and/or incorporated through contract provisions, enable the Court to exercise subject matter jurisdiction over the present suit?
The plaintiff contended in its pleadings that “[t]he Ho-Chunk Nation Trial Court has subject matter jurisdiction to resolve contract disputes,” citing the case of Ho-Chunk Nation v. Ross Olsen, CV 99-81 for that proposition. Complaint at 1. In Olsen, the Court consulted the Ho-Chunk Nation Traditional Court [hereinafter Traditional Court] to ascertain “whether Ho-Chunk Nation custom and tradition recognized agreements analogous to the modern day ‘contract.’ ” Olsen, CV 99-81, 2000 WL 35716348, 2 Am. Tribal Law 299, 307 (HCN Tr. Ct., Sept. 18, 2000). The Traditional Court responded by relating that “according to the Ho-Chunk Nation’s traditions and customs, once an agreement for the performance of services or production of goods is made, the parties have a duty to fulfill their obligations,” meaning “that it was wrong for one party to keep a benefit obtained from an agreement without providing the agreed upon compensation.” Id. at 9, 14 (footnote omitted). While the Traditional Court has acknowledged this fundamental concept, it has not extended this pronouncement to include causes of action such as promissory estop-pel. See Maureen Arnett v. Ho-Chunk Nation Department of Administration, CV 00-60 (HCN Tr. Ct., Jan. 8,10 2001) at 16-18; see also Courtroom Log/Minutes, CV 00-91 (Scheduling Conference/Motion *392 Hearing, Dec. 13, 2000) at 12 (“We’re arguing that ... under Ross Olsen that it’s not limited specifically to contract actions, that it’s contract and actions which would arise in the form of unjust enrichment or promissory estoppel or other contract-like claims.”) In Arnett, the defendant, by and through Ho-Chunk Nation Department of Justice Attorney Michael P. Murphy, argued that the concept of promissory estop-pel did not arise under the custom and tradition of the Ho-Chunk Nation. Brief in Support of Defendant’s Motion to Dismiss, CV 00-60 (Nov. 28, 2000) at 7.
Unlike the case at bar, the issue of whether the signatory to the contract had properly delegated authority was not before the Court in Olsen. This concern, also, did not arise in several contract disputes involving private parties wherein the Court based its relief upon the above traditional principle. See Amanda J. Orozco v. Sandra J. Orozco, CV 01-24 (HCN Tr. Ct., April 26, 2001); Tom R. Erdman v. Andrea G. Storm, CV 01-33 (HCN Tr. Ct., April 24, 2001); Tamara Scoles v. Michael Thompson, CV 00-100 (HCN Tr. Ct., Dec. 28, 2000); Michelle Wood v. Vickie Hindsley, CV 00-86 (HCN Tr. Ct., Dec. 28, 2000); and Gerald, F. Conley v. Christopher Cloud and Becky, and Diane Cloud Peterson, CV 00-37, 2000 WL 35716347, 2 Am. Tribal 289 (HCN Tr. Ct., Aug. 2, 2000). Each aforementioned case dealt simply with compensation (i.e. plaintiff provided a service to the defendant, and defendant refused to render the agreed upon payment for such service or vice versa).
The constitutional documents require proper delegations of authority for entering into contractual arrangements, and the Court eannot waive these requirements. The plaintiff, as a result of its potential errors, advocates setting aside the provisions agreed upon by the defendants through the contracting process in favor of the Court establishing the substantive rights of the parties under custom and tradition. The Court has never attempted to apply custom and tradition for purposes of interpreting an agreement when one of the parties lacked the authority to enter into the agreement in the first instance. Such a practice would prove fundamentally unfair to the party having no reason to doubt the authority of the signatory. Moreover, custom and tradition would not address the dispositive issues identified above. The relevant constitutional provisions provide authoritative guidance in rendering this decision.
Parties should fully expect that the Court will independently assess whether it may exercise subject matter jurisdiction over a proceeding. The Ho-Chunk Nation Rules of Civil Procedure [hereinafter HCN R. Civ. P.] require the plaintiff to “contain short, plain statements of the grounds upon which the court’s jurisdiction depends” within its Complaint. HCN R. Civ. P. 3(A). Plaintiffs must endeavor to clearly establish the foregoing prior to seeking relief in this tribunal. The Court possesses little control over the extent of its subject matter jurisdiction, and it may only hear cases which properly identify a source of law as stated within the Constitution, Aet. VII § 5(a).
The Court informed the plaintiff of the ramifications of a failure to submit appropriate documentation identifying a proper delegation of authority. Order (Insufficient Evidence) at 10. As shown above, the plaintiff was unable to make such a presentation. The Court accordingly grants the defendant’s November 7, 2000 Motion to Dismiss.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judge- *393 merit or Order. Otherwise, “[a]ny final Judgement or Order of the Trial Court may be appealed to the Ho-Chunk Nation Supreme Court. The Appeal must comply with the Ho-Chunk Nation Rules of Appellate Procedure [hereinafter HCN R.App. P.j, specifically [HCN R.App. P.j, Rule 7, Right of Appeal" HCN R. Civ. P. 61. The appellant “shall within thirty (30) calendar days after the day such judgment or order was rendered, file with the [Supreme Court] Clerk of Court, a Notice of Appeal from such judgment or order, together with a filing fee of thirty-five dollars ($35 U.S.).” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgement or Trial Court Order must follow the [HCNR.App. P.j.’’HCNR. Civ. P. 61.
IT IS SO ORDERED this 20th day of June, 2001 at the Ho-Chunk Nation Trial Court in Black River Falls, Wisconsin from within the sovereign lands of the Ho-Chunk Nation.

. The Court also possesses the authority to apply controlling federal law if directly implicated by the facts and circumstances of a case. See David M. Ujke v. Ho-Chunk Nation, CV 96-63 (HCN Tr. Ct., Aug. 17, 1998) aff’d SU 98-06 (HCN S.Ct., Feb. 22, 1999). The Supreme Court of the Ho-Chunk Nation has concluded that "the simple rewriting of a tribal constitution does not allow for a tribe to circumvent federal laws which are applicable *389 to Indian tribes. For example, a tribe could not rewrite their constitution to state that it would not comply with the Indian Civil Rights Act...." (The Trial Court held an attorney contract invalid since the Secretary of the Interior had not approved the contract as required by 25 U.S.C. § 476(e). The HCN Constitution did not retain this explicit requirement as stated in the Winn. Constitution, Art. X( 1 )(b).) Id., SU 98-06 at 4.