**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARK S. ALLEN,
             *Plaintiff-Appellant,*

v.

GOLD COUNTRY CASINO; THE BERRY
CREEK RANCHERIA OF TYME MAIDU
INDIANS; MATTIE MAYHEW,
             *Defendants-Appellees.*

No. 05-15332

D.C. No.
CV-04-00322-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
August 14, 2006—San Francisco, California

Filed September 29, 2006

Before: William C. Canby, Jr., David R. Thompson, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Canby

**COUNSEL**

Donald Earl Childress III, Jones Day, Washington, D.C., for the plaintiff-appellant.

Blaine I. Green, Pillsbury, Winthrop, Shaw, Pittman, LLP, San Francisco, California, for the defendants-appellees.

**OPINION**

CANBY, Circuit Judge:

Mark Allen is a former employee of the Gold Country Casino, which is owned and operated by the Tyme Maidu Tribe of the Berry Creek Rancheria in California. After the Casino fired Allen, he sued it and the Tribe. The district court dismissed the claims against the Tribe and the Casino on the ground of sovereign immunity. Allen concedes the Tribe's immunity, but argues that the district court erred in extending that immunity to the Casino without scrutinizing the relationship between the Tribe and the Casino. We find no error in the district court's dismissal of Allen's claims against the Casino because the record and the law establish sufficiently that it functions as an arm of the Tribe.

Allen also asserted various claims against Mattie Mayhew, a tribal member, and John Doe defendants. We reverse in part the district court's dismissal of these claims and remand for consideration of Allen's claims under 28 U.S.C. §§ 1981 and 1985, along with any state law claims over which the district court may exercise supplemental jurisdiction.

## I. Facts

Allen was employed by Gold Country Casino as a surveillance supervisor. Gold Country Casino is a tribal entity formed by a compact between the federally recognized Tyme Maidu Tribe and the State of California. The Casino is wholly owned and operated by the Tribe. Allen contends he was discharged in retaliation for reporting rats in the Casino's restaurant and for applying to "the white man's court" for guardianship of three tribal children.

Allen obtained a right to sue letter from the Equal Employment Opportunity Commission and, proceeding pro se, filed this action in federal district court. Allen named as defendants

the Casino, the Tribe, Mattie Mayhew, and John Does 1 thru 300, against whom he asserted various employment, civil rights, and conspiracy claims. The magistrate judge recommended that the claims against the Tribe be dismissed on the ground of sovereign immunity. The magistrate judge assumed without analysis that the Tribe's immunity extended to the Casino. The magistrate judge found that the only remaining claim was for false accusations against Mayhew. He recommended dismissal for lack of subject matter jurisdiction because this was a non-federal claim. The district court adopted these recommendations and dismissed all claims.

On appeal, Allen, who is now represented by counsel, concedes that the Tribe is immune from suit. But he contends that this immunity does not extend automatically to the Gold Country Casino. He urges that the district court be required to apply a three-part test to determine whether the Casino is "analogous to a governmental agency or operating in a governmental capacity as an arm of the tribe." Allen argues in the alternative that, if the Casino is immune, it waived its immunity by referring to federal law in its employment materials.

We review de novo the district court's dismissal under Federal Rule of Civil Procedure 12(b). *See, e.g.*, *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). We also review de novo questions of sovereign immunity and subject matter jurisdiction. *Orff v. United States*, 358 F.3d 1137, 1142 (9th Cir. 2004).

## II.   Discussion

### A.   Sovereign Immunity of the Casino

**[1]** Although the Supreme Court has expressed limited enthusiasm for tribal sovereign immunity, the doctrine is firmly ensconced in our law until Congress chooses to modify it. *See Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 757-60 (1998). This immunity extends to business activities of the

tribe, not merely to governmental activities. *See id.* at 760; *Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1100 (9th Cir. 2002). When the tribe establishes an entity to conduct certain activities, the entity is immune if it functions as an arm of the tribe. *See, e.g.*, *Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 978 (9th Cir. 2006) (holding that Blackfeet Tribe's sovereign immunity extends to Blackfeet Housing Authority); *Redding Rancheria v. Super. Ct.*, 88 Cal. App. 4th 384, 388-89 (2001) (holding that off-reservation casino owned and operated by tribe was arm of the tribe, and therefore was entitled to sovereign immunity); *Trudgeon v. Fantasy Springs Casino*, 71 Cal. App. 4th 632, 642 (1999) (recognizing sovereign immunity of for-profit corporation formed by a tribe to operate the tribe's casino). The question is not whether the activity may be characterized as a business, which is irrelevant under *Kiowa*, but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe.

**[2]** Allen's contention that the district court erred in failing to scrutinize the nature of the relationship between the Tribe and the Casino fails to accord sufficient weight to the undisputed fact that the Casino is owned and operated by the Tribe. Allen recognized the reality of the Casino as an arm of the Tribe when he sued the Tribe "d.b.a." ("doing business as") the Casino. And this is no ordinary business. The Casino's creation was dependent upon government approval at numerous levels, in order for it to conduct gaming activities permitted only under the auspices of the Tribe. The Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2710(d)(1), required the Tribe to authorize the Casino through a tribal ordinance and an interstate gaming compact. The Tribe and California entered into such a compact "on a government-to-government basis."

**[3]** These extraordinary steps were necessary because the Casino is not a mere revenue-producing tribal business (although it is certainly that). The IGRA provides for the cre-

ation and operation of Indian casinos to promote "tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). One of the principal purposes of the IGRA is "to insure that the Indian tribe is the primary beneficiary of the gaming operation." *Id.*, § 2702(2). The compact that created the Gold Country Casino provides that the Casino will "enable the Tribe to develop self-sufficiency, promote tribal economic development, and generate jobs and revenues to support the Tribe's government and governmental services and programs."

**[4]** With the Tribe owning and operating the Casino, there is no question that these economic and other advantages inure to the benefit of the Tribe. Immunity of the Casino directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general. *Cf. Alden v. Maine*, 527 U.S. 706, 750 (1999) (noting that sovereign immunity protects the financial integrity of States, many of which "could have been forced into insolvency but for their immunity from private suits for money damages"). In light of the purposes for which the Tribe founded this Casino and the Tribe's ownership and control of its operations, there can be little doubt that the Casino functions as an arm of the Tribe. It accordingly enjoys the Tribe's immunity from suit. *See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 29 (1st Cir. 2000) (stating that tribal housing authority "as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign immunity"); *Marceau*, 455 F.3d at 978 (recognizing that tribal sovereign immunity "extends to agencies and subdivisions of the tribe").

## B.   Waiver of Immunity

**[5]** The Casino did not waive immunity when it provided in Allen's employment application that he could be terminated "for any reason consistent with applicable state or federal law," or when it stated in the Employee Orientation Booklet that it would "practice equal opportunity employment

and promotion regardless of race, religion, color, creed, national origin . . . and other categories protected by applicable federal laws." These statements are not a "clear" waiver of immunity. *See C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001). At most they might imply a willingness to submit to federal lawsuits, but waivers of tribal sovereign immunity may not be implied. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (explaining that a waiver of immunity "must be unequivocally expressed").

**[6]** This case is distinguishable from *C & L Enterprises* and *Marceau*. In *C & L Enterprises*, the Supreme Court held that the tribe waived its immunity by expressly agreeing to arbitration of disputes and to "enforcement of arbitral awards 'in any court having jurisdiction thereof.' " 532 U.S. at 414. In *Marceau*, the tribe established a housing authority by ordinance that gave the tribe's "irrevocable consent to allowing the Authority to sue and be sued in its corporate name," and further provided that any judgment against the Authority would not be a lien on the Authority's property but would be paid out of "its rents, fees or revenues." 455 F.3d at 981. The statements in Allen's employment documents did not approach these explicit waivers of immunity from suit; the statements' references to federal law did not mention court enforcement, suing or being sued, or any other phrase clearly contemplating suits against the Casino. These documents did not amount to an unequivocal waiver of the Casino's sovereign immunity.

**[7]** Allen further argues that we should analogize the purported waiver of tribal immunity to waivers of immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605. That Act specifies exceptions to the immunity of foreign states, *see* § 1605(a), which the Tribe is not. As we pointed out in *Richardson v. Mt. Adams Furniture (In re Greene)*, 980 F.2d 590 (9th Cir. 1992), the fact that Congress limited the immunity of foreign sovereigns simply underscores the breadth of sovereign immunity in the absence of

congressional action; because Congress has not limited the immunity of Indian tribes, it retains its full force. *See id.* at 594; *see also Kiowa*, 523 U.S. 751, 759-60. There is simply no room to apply the FSIA by analogy, as Allen would have us do. The FSIA precludes immunity of a foreign state when that state engages in commercial activities in the United States. 28 U.S.C. § 1605(a)(2). To apply that provision to the Tribe would contravene the Supreme Court's decision in *Kiowa*, holding that tribal immunity extended to commercial activities of the tribe. *Kiowa*, 523 U.S. at 760. FSIA also permits a waiver of immunity to be implied, *see* 28 U.S.C. § 1605(a)(1), while the Supreme Court permits no such implied waiver in the case of Indian tribes. *See*, *e.g.*, *Santa Clara Pueblo,* 436 U.S. at 58. We accordingly decline Allen's invitation to apply FSIA by analogy to tribal sovereign immunity.

## C.　Allen's Remaining Claims

[8] Although the issue is not free from doubt, we conclude that the district court erred in its dismissal of the remainder of the complaint on the ground that it presented no federal claims against Mayhew and the unnamed defendants. Allen's pro se pleadings are unquestionably difficult to decipher, but they must be liberally construed. *See Ortez v. Washington County*, 88 F.3d 804, 807 (9th Cir. 1996). In his response to the defendants' motion to dismiss, Allen explained that he was asserting against all defendants a claim under 42 U.S.C. § 1985. He also accused all defendants except Mayhew of violating 42 U.S.C. § 1981. Giving Allen the benefit of doubt, we conclude that he should be given the opportunity to amend his complaint to assert these two claims intelligibly. We express no opinion, of course, on the procedural or substantive merits of the claims beyond permitting Allen to assert them.

[9] If Allen proceeds in district court with these federal claims, the district court may have supplemental jurisdiction

over Allen's state-law claims under 28 U.S.C. § 1367. We therefore vacate the dismissal of Allen's state-law claims for lack of supplemental jurisdiction, so that the district court may consider anew its jurisdiction over those claims.

**[10]** We affirm the dismissal of Allen's claims under 18 U.S.C. §§ 241 and 242 because these are criminal statutes that do not give rise to civil liability. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Similarly, we affirm the dismissal of his claim under 28 U.S.C. § 1343 because this jurisdictional statute does not provide a cause of action. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980). The district court also properly dismissed Allen's claim under 42 U.S.C. § 1983 because there is no allegation that any defendant was acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 45-46 (1988).

### III.   Conclusion

We affirm the district court's judgment dismissing Allen's claims against the Tribe and Casino on the ground of sovereign immunity. We also affirm the dismissal of claims against the individual defendants under 18 U.S.C. §§ 241 and 242, as well as claims under 28 U.S.C. §§ 1343 and 1983. We vacate and remand the judgment of dismissal without prejudice in favor of Mayhew and the Doe defendants because Allen asserted federal claims against those defendants under 42 U.S.C. § 1985. Allen also asserted claims against the Doe defendants under 42 U.S.C. § 1981. Finally, we vacate the dismissal of state-law claims for lack of supplemental jurisdiction, and remand for any appropriate exercise of supplemental jurisdiction over those claims.

The parties will bear their own costs on appeal.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**