# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 8, 2005　　　Decided September 30, 2005

No. 04-7037

ROBERT LEE BEECHAM, PERSONAL REPRESENTATIVE OF THE
ESTATE OF KENNETH FORD, ET AL.,
APPELLEES

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(01cv02243)

———

*Arman Dabiri* argued the cause and filed the briefs for appellants Socialist People's Libyan Arab Jamahiriya, *et al.*

*Steven R. Perles* argued the cause for appellees. With him on the brief were *Thomas Fortune Fay*, *Jacob A. Stein*, and *Robert L. Bredhoff*.

*Stuart H. Newberger*, *Clifton S. Elgarten*, and *Michael L. Martinez* were on the brief for *amici curiae* Blake Kilburn, *et al.* in support of appellees.

Before: SENTELLE, RANDOLPH, and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: The Socialist People's Libyan Arab Jamahiriya and other defendants -- collectively Libya -- appeal the district court's order requiring the parties to confer and propose a jurisdictional discovery plan. Our inquiry begins -- and ends -- with an examination of our jurisdiction to hear this appeal.

Plaintiffs are victims and estate representatives of victims injured or killed in the 1986 bombing of the "La Belle" discotheque in West Berlin, Germany. Their complaint alleges as follows. Defendant Colonel Muammar Al-Ghaddafi, head of the Libyan government, directed Libyan agents to plan, prepare, and execute the attack. Libyan agent Souad Chraidi transported plastic explosives, a detonator, and a timing device from the Libyan embassy in East Berlin to an apartment in West Berlin. Chraidi and others made the final preparations for the attack, fitting the detonator and timer to the explosives, which they concealed in a bag for delivery to the discotheque. On the night of the bombing, Verena Chanaa and Andrea Häusler brought the bomb to the discotheque, where they activated the timing device, placed the bomb at a seat in the center of the dance floor, and left. In the early morning hours of April 5, 1986, the bomb exploded with approximately 260 people inside the discotheque. Three people were killed and more than two hundred injured.

Among other things, plaintiffs point to telex communications between Libyan intelligence in Tripoli and the Libyan embassy in East Berlin confirming defendants' responsibility for the attack. Colonel Al-Ghaddafi purportedly admitted as much to a German ambassador in a meeting in 2001.

Plaintiffs invoked the district court's subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602-1611. Section 1605(a)(7) of the Act carves out an exception to the provision giving foreign states immunity from suits in federal and state courts. *See* 28 U.S.C. § 1604. Under certain circumstances, a foreign state has no immunity in a suit seeking damages "for personal injury or death that was caused by an act of torture, extrajudicial killing . . . or the provision of material support or resources . . . for such an act" if officials, employees or agents of the foreign state engaged in these actions while acting within the scope of their office or employment. 28 U.S.C. § 1605(a)(7). Libya interposed a sovereign immunity defense and moved to dismiss the complaint. According to the motion, plaintiffs had not sufficiently alleged, under § 1605(a)(7), that Libya "caused" the harm plaintiffs suffered from the bombing. In *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39-40 (D.C. Cir. 2000), we viewed as jurisdictional the requirement that plaintiffs bring their case within one of the exceptions in § 1605(a) when the foreign state has claimed sovereign immunity. In response to Libya's motion in this case, plaintiffs moved for "jurisdictional discovery," which Libya opposed.

The district court considered the allegations of the complaint to be legally sufficient because, if true, the causal chain implicating Libya and the individual defendants was "pled sufficiently clearly and specifically to counter defendants' legal challenge." As to the complaint's factual sufficiency, *Phoenix Consulting* forbade the court from treating the complaint's allegations as true, and required it to "go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." 216 F.3d at 40. Libya argued that plaintiffs had not "presented a scintilla of evidence to support the allegations of the complaint," which the district court took as a denial of plaintiffs' allegations

"sufficient to merit initial targeted discovery" to resolve subject matter jurisdiction.

To that end, the court ordered the parties to "confer" and submit "a joint report proposing a plan for conducting discovery limited to facts bearing upon the court's subject matter jurisdiction." The court stayed its order while the parties pursued settlement talks. When the talks proved fruitless, the court reinstated the order. Libya invokes this court's appellate jurisdiction under 28 U.S.C. § 1291.

In cases arising under the Foreign Sovereign Immunities Act, we have recognized our jurisdiction to review a district court's order denying a foreign state's motion to dismiss on the ground of sovereign immunity. The theory is that under the collateral order doctrine, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), such orders finally determine the foreign state's right to be immune from burdens of a lawsuit altogether. *See, e.g.*, *Jungquist v. Sheikh Sultan Bin Khalifa al Nahyan*, 115 F.3d 1020, 1025-26 (D.C. Cir. 1997). We have also exercised mandamus jurisdiction to consider the scope of a district court's jurisdictional discovery order. *In re Minister Papandreou*, 139 F.3d 247, 251-52 (D.C. Cir. 1998). Here the theory is, in part, that "the demands of international comity" counsel against requiring foreign officials to subject themselves to contempt and only then appeal the contempt citation. *Id.* We also said that a jurisdictional discovery order might impose litigation burdens on a foreign state somewhat similar to those the sovereign immunity defense protects against. *Id.* at 251. Libya now seeks to add a third category: orders comparable to those under Federal Rule of Civil Procedure 24(f) requiring the parties to confer and submit a joint jurisdictional discovery plan as a prelude to actual discovery. But Libya points to no case in which a court has exercised appellate jurisdiction over such orders, and we see no basis for expanding our appellate

jurisdiction to cover them. *See McKesson Corp. v. Islamic Republic of Iran*, 52 F.3d 346, 353 (D.C. Cir. 1995).

While a limited class of interlocutory orders may be considered "final decisions" of the district courts under 28 U.S.C. § 1291, and thus immediately appealable, orders to participate in the sort of discovery conference contemplated here are not among them. Such orders do not by any stretch resolve important issues in the case and they do not "conclusively determine" the scope of jurisdictional discovery. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

*Papandreou*, on which Libya mainly relies, does not support our jurisdiction. For one thing, Libya has brought an appeal under 28 U.S.C. § 1291; *Papandreou* was before us on a petition for a writ of mandamus. The rules governing these modes of review are different. *See In re Minister Papandreou*, 139 F.3d at 250; FED. R. APP. P. 21.

For another thing, the burdens of discovery on the foreign state, which also played a role in *Papandreou*, are absent here. The district court has ordered a conference like the ones contemplated in Rule 26(f); it has not ordered discovery of any scope. As in Rule 26(f) conferences, the burden of conferring and formulating a discovery plan in this case falls on the lawyers for the opposing sides. Both sides recognized as much in their Joint Report of Counsel on Discovery Plan, which they submitted to the district court. (The parties' counsel already have met and conferred for settlement purposes.)

Libya argues that, as a foreign state, it cannot be required to violate the district court's order and be held in contempt for this court to have jurisdiction. Appellants' Br. at 8; *compare In re Minister Papandreou*, 139 F.3d at 251-52. But whether the district court would hold Libya in contempt for violating the

order is not at all clear. District courts can impose any number of sanctions besides contempt when a party fails to comply with a discovery order. *See, e.g.*, FED. R. CIV. P. 37(b). Our jurisdiction cannot rest on the possibility of contempt. The law of this circuit now is that "a civil contempt order against a party in a pending proceeding is not appealable as a final order under 28 U.S.C. § 1291." *Byrd v. Reno*, 180 F.3d 298, 302 (D.C. Cir. 1999). *Byrd* explicitly rejected *Papandreou*'s suggestion to the contrary. *Id.* at 300-01.

There are additional reasons why appellate jurisdiction is wanting. This litigation currently is several steps removed from *Papandreou*. The district court there had issued a jurisdictional discovery order. Here, there has yet to be a conference of counsel to work out a discovery plan. It is possible the parties will agree about the proper scope of discovery. If so, they would then submit the plan to the court, which may or may not approve it. It is also possible that Libya will convince plaintiffs or the district court, as strenuously argued to this court, that Libya simply cannot "under any possible scenario or circumstances" provide relevant information. Appellants' Br. at 16. If the parties in good faith are unable to work out a discovery plan, the district court would have to make its decision in the exercise of its discretion. *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.146 (3d ed. 2005). Only if the court orders jurisdictional discovery and clearly abuses its discretion in determining the scope of discovery could mandamus possibly lie. *In re Minister Papandreou*, 139 F.3d at 252.

Libya frames its appeal as if we had before us the question whether jurisdictional discovery is appropriate at all. This recasting of the issue changes nothing. It is still unknown whether the parties will resolve the issues in the course of crafting a discovery plan or whether the district court will

actually order specific discovery to take place. This court cannot have jurisdiction before actual discovery is ordered. Any decision now would be premature. The issue Libya poses may never arise or it may arise in a context that bears on its resolution. These are the hallmarks of an interlocutory order over which the courts of appeals do not have jurisdiction. *See United States v. Cisneros*, 169 F.3d 763 (D.C. Cir. 1999).

*Appeal dismissed for lack of jurisdiction.*