# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 5, 2014          Decided November 25, 2014

No. 13-7115

EUGENE NYAMBAL,
APPELLEE

v.

THE INTERNATIONAL MONETARY FUND,
APPELLANT

———

Consolidated with 14-7025

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01037)

———

*Patrick J. Carome* argued the cause for appellant. With him on the brief were *Christopher L. Morgan* and *Adam I. Klein*.

*John M. Shoreman* argued the cause and filed the briefs for appellee.

Before: TATEL and BROWN, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*:   The International Monetary Fund's ("Fund's") motion to dismiss this tort suit was converted into a discovery dispute when the district court, over the Fund's objections, granted plaintiff's request for jurisdictional discovery.  The Fund sought reconsideration of the discovery order; the court denied it and separately disposed of the motion to dismiss as moot because the plaintiff had filed an amended complaint.  Because we think more than a bare assertion that "something may turn up" is necessary to justify jurisdictional discovery in the face of the Fund's broad immunity, we reverse.

**I**

Eugene Nyambal, a former senior advisor to the Fund, says he was terminated after raising allegations of corruption.  Shortly after he and the Fund went their separate ways, Mr. Nyambal says he entered the Bank-Fund Staff Credit Union ("Credit Union"), a public credit union located in leased space on the Fund's premises, to transact personal banking business and was "accosted" by the Credit Union's security personnel who "escorted [him] from the Credit Union in full view of the public and a professional colleague . . . ."  Complaint at 6 ¶ 13, Nyambal v. Int'l Monetary Fund, No. 1:12-cv-01037 (D.D.C. May 2, 2014).  Based on this incident, Nyambal filed suit against the Fund, asserting claims for assault, false imprisonment, and intentional infliction of emotional distress.

The Fund submitted affidavits categorically denying any express waiver of the absolute immunity conferred by its Articles of Agreement and the International Organization's Immunity Act (IOIA), *see generally* Articles of Agreement, Art. IX § 3 (given force of law by 22 U.S.C. § 286h); IOIA, Pub. L. No. 79-291, 59 Stat. 669 (1945) (codified at 22 U.S.C.

§ 288a(b)).  When the Fund moved to dismiss, invoking its absolute immunity, Nyambal countered by moving to stay the dismissal motion and seeking jurisdictional discovery to show the Fund had expressly waived its immunity in its contracts with the Credit Union or the security services firm.  Although the Fund's affidavits confirmed no express waiver had been contemplated, presented to the Board, or approved, the district court authorized jurisdictional discovery.  The Fund moved for reconsideration and voluntarily furnished complete copies of the Credit Union and security services contracts.  The Fund's overtures proved unavailing.  The district court rebuffed its entreaty for reconsideration; in the court's view, full disclosure of the two pertinent contracts did not, "obviate the need for further jurisdictional discovery."  Minute Order, Nyambal v. Int'l Monetary Fund, No. 1:12-cv-01037 (D.D.C. Feb. 12, 2014).

The district court agreed with Nyambal that "inconsistencies in the contracts," *id.*, rendered reconsideration ill-advised.  Article 28 of the Credit Union lease contract expressly provides for non-waiver.  *See* Patterson Aff. ¶ 2 ("[T]he Fund "does not, by virtue of this Lease, waive [its] immunities, which may only be waived by a decision of the Executive Board of the International Monetary Fund.").  Yet Article 13.1 provides that the Fund "shall not be liable for any personal injury to, or damages to the personal property of, Tenant, Tenant's . . . business invitees, . . . customers, clients, [or] . . . guests[,] . . . arising from the use, occupancy and condition of the Premises or the Building, *unless* such personal injury or damage to property resulted solely from the negligence or willful misconduct of the Landlord, its agents or employees."  Brief of Defendant-Appellant at 48, Nyambal v. Int'l Monetary Fund, No. 13-7115 (D.C. Cir. May 2, 2014) (emphasis added).  Thus, in Nyambal's—and the district court's—view the second sub-

clause of Article 13.1 is suggestive of waiver or is otherwise in tension with Article 28's broad and express denial.

In a separate order, issued the same day, the court also granted Nyambal's motion to amend his complaint. In light of Nyambal's amended complaint, the court denied the Fund's motion to dismiss as moot.

Twice spurned below on the issue of jurisdictional discovery, the Fund now challenges the district court's discovery orders on appeal. The Fund also contests the denial of its motion to dismiss.

## II

A couple of preliminary questions about our jurisdiction must be resolved before we can consider the substance of the Fund's claims. Ordinarily, we have jurisdiction only to review final decisions of the district court, 28 U.S.C. § 1291, but under collateral order doctrine, section 1291 jurisdiction is available for a small subset of decisions which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require [] appellate consideration to be deferred . . . ." *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546 (1949). Thus, a decision may be collaterally appealed if it: [1] "conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from final judgment." *Will v. Hallock,* 546 U.S. 345, 349 (2006).

A district court's grant of discovery against an absolutely immune defendant is sufficiently conclusive to qualify for collateral review. *See generally Foremost-McKesson, Inc. v.*

*Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C. Cir. 1990). "[A] trial court's denial of an immunity defense entitles the defendant to an immediate appeal . . . ." *In re Papandreou,* 139 F.3d 247, 251 (D.C. Cir, 1998). Just as a district court's denial of sovereign immunity finally determines the foreign state's right to be immune from the burden of a lawsuit, a court's grant of jurisdictional discovery denies an international organization protection from similar burdens. *See Beecham v. Socialist People's Libyan Arab Jamahiriya,* 424 F.3d 1109, 1111 (D.C. Cir. 2005). "Here too . . . immediate review is appropriate." *In re Papandreou,* 139 F.3d at 251.

Similarly, the denial of a motion to dismiss on immunity grounds would satisfy the *Cohen* criteria for interlocutory review. *Kilburn v. Socialist People's Arab Jamahiriya,* 376 F.3d 1123, 1126 (D.C. Cir. 2004). However, in this case, the district court's denial did not rest on the Fund's claim of immunity. Instead, the court found Nyambal's filing of an amended complaint mooted the motion to dismiss. Because the court did not resolve the question of immunity in denying the motion to dismiss, interlocutory review is available for the grant of jurisdictional discovery but not the determination of mootness. As the Fund itself concedes, Nyambal's amended pleading "effect[s] no material change in his factual allegations or legal theories," Brief of Defendant-Appellant at 55, or otherwise requires more than a single renewal of the Fund's pre-existing motion.

## III

Our review of "[a] foreign nation's entitlement to sovereign immunity raises questions of law reviewable de novo." *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101, 1105 (D.C. Cir. 2001), *vacated on other*

*grounds*, 320 F.3d 280 (D.C. Cir. 2003). *See also Kirkham v. Société Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005). However, "we review the district court's findings of fact—including facts that bear upon immunity and therefore upon jurisdiction—for clear error; hence, . . . once the facts have been settled, we decide de novo whether those facts are sufficient to divest the foreign sovereign of its immunity." *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004). We apply the same analytical approach to an international organization's claim of immunity.

In the context of the IOIA, we have noted that "immunity, where justly invoked, [] shields defendants not only from the consequences of litigation's results but also from the burden of defending . . . ." *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981). The sweep of the Fund's immunity is broader than the protection afforded by the IOIA's aegis alone. Under the dual protections conferred by the Fund's Articles of Agreement and the IOIA, "[t]he Fund . . . enjoy[s] immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract." Articles of Agreement, Art. IX § 3; IOIA, Pub. L. No. 79-291, 59 Stat. 669 (1945). Nyambal does not dispute that the Fund is immune absent express waiver under its Articles of Agreement. In light of the Third Circuit's decision in *OSS Nokalva, Inc. v. European Space Agency*, 617 F.3d 756 (3d Cir. 2010), he nonetheless requests this Court to "revisit" its decision in *Atkinson v. Inter-American Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998), and narrow the scope of IOIA sovereign immunity for international organizations. We decline to do so. *Atkinson* remains vigorous as Circuit law; international organizations "enjoy the same immunity from suit and every form of judicial process as is enjoyed by

foreign governments, except to the extent that such organizations [] expressly waive their immunity." 156 F.3d at 1337. *See Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 876 (D.C. Cir. 1992) ("[Prior] decisions . . . bind the circuit unless and until overturned by the court en banc or by Higher Authority.").

The Fund argues that its multi-layered immunities warrant blanket protection from effectively all forms of jurisdictional discovery. Such a result is unwarranted; though unusually expansive, the Fund's immunity may be defeated by a showing of express waiver. The Fund's entitlement . . . to immunity from suit therefore remains "a critical preliminary determination" and the parties "must be afforded a fair opportunity to define issues of fact and law, and to submit evidence necessary to the resolution of the issues." *Foremost-McKesson, Inc.*, 905 F.2d at 449. While jurisdictional discovery may be warranted only in comparatively rare circumstances, it is appropriate where a plaintiff articulates a "specific, well-founded allegation that an express waiver exists." *Polak v. Int'l Monetary Fund,* 657 F. Supp. 2d 116, 122 (D.D.C. 2009); *see Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013) (looking to the "plausibility" of allegations, in the context of a waiver of immunity under the Federal Tort Claims Act).

Nyambal stumbles at this threshold hurdle of plausibility. "[D]iscovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998). Yet Nyambal relied below upon little more than bare assertion in support of his initial requests for discovery; for example, simply speculating that the Credit Union and security service contracts would "undoubtedly address the [Fund's] liability for actions arising

from acts and occurrences related to" public transactions performed under the contract without offering any specific, non-conclusory factual allegations to explain why such contracts could plausibly be thought to incorporate an express waiver of the Fund's immunity as to third party invitees. Plaintiff's Response to Motion to Dismiss at 6, Nyambal v. Int'l Monetary Fund, No. 1:12-cv-01037 (D.D.C. Dec. 28, 2012). Because Nyambal's assertions amount to mere "conjecture and surmise," they cannot provide sufficient support to justify jurisdictional discovery. *Crist v. Republic of Turkey*, 995 F. Supp. 5, 13 (D.D.C. 1998).

Moreover, the Fund's subsequent voluntary disclosure of the Credit Union contract conclusively resolved any question of waiver.[1] Article 13.1 of the contract provides that the Fund "shall not be liable for any personal injury to or damage to . . . [the Credit Union's] business invitees, . . . customers, clients, [or] . . . guests . . . unless such personal injury or damage to property resulted solely from the negligence or willful misconduct of the Landlord." Brief of Defendant-Appellant at 48. Nyambal postulates that the "unless" sub-clause is an express waiver that directly contradicts the contract's Article 28 blanket non-waiver provision. He therefore argues that the Fund's voluntary release of the contract did not eliminate the need for further discovery because, in his view, the contract "raise[s] more questions than [it] answer[s]." Brief of Plaintiff-Appellee at 18–20, Nyambal v. Int'l Monetary Fund, No. 13-7115 (D.C. Cir. June 4, 2014).

Nothing in Article 13.1 of the Credit Union contract, however, directly contradicts Article 28's broad language of

---

[1] The Fund's contract with the security services firm was also voluntarily furnished. Waiver under that contract is not directly contested on appeal.

non-waiver. Indeed, the thrust of the article's intent is clear from its title: it deals with "*limitations* o[n] liability" to the Fund under the contract. The article's "unless" sub-clause can readily be interpreted as a limitation on waiver where the Fund has *already* expressly waived its immunity, rather than a curiously obscure form of express waiver buried in a clause intended to limit the scope of liability owed by the Fund. *See* 17A Am. Jur. 2d Contracts § 384 ("No contract provision should be construed as being in conflict with another unless no other reasonable interpretation is possible."). Read in context, the "unless" sub-clause of Article 13.1 is simply insufficient to be interpreted as constituting a potential express waiver warranting further discovery. Moreover, the Fund's affidavits, *e.g.*, Lin Aff. at ¶¶ 3–4, and the unambiguous language of Article 28's contractual non-waiver clause require that any waiver of immunity occur through a "decision of the Executive Board of the International Monetary Fund," Patterson Aff. at ¶ 3 (quoting Article 28). Nyambal has not raised any specific, plausible assertion that the contracts contain an express waiver; or that the Board itself has actually ratified any purported contractual waiver; nor has he otherwise suggested that an express waiver can occur in the absence of such ratification.[2] Consequently, the Fund's voluntary disclosure of the contested contracts did obviate the need for any further discovery.

Nyambal raises a secondary argument that the Credit Union's Article 15 indemnification clause is inexplicable

---

[2] In addition to the Board ratification requirement of Article 28 of the Credit Union contract, the Fund's affidavits assert any purported waiver is inoperative absent ratification under the Fund's Articles of Agreement and its By-Laws. Lin Aff. at ¶ 3. Whether an express waiver of immunity in a contract signed by an executive officer of the Fund would be nullified by the absence of Board ratification is a question we leave for another day.

absent an intention for the Fund to waive its immunity. Nyambal reasons that the contract thereby creates a "framework" to allow the Fund to expressly waive its immunity in the normal course of business. But a "framework" permitting the possibility of waiver is *not* a "specific, well-founded allegation that an express waiver [actually] exists." *Polak*, 657 F. Supp. 2d at 122. It is undisputed that the Fund "could" waive its immunities. Nyambal's framework theory consists of nothing more than unsupported speculation that the Fund "may" have done so.

## IV

For the foregoing reasons we reverse the district court's orders permitting jurisdictional discovery. We remand for further proceedings consistent with this decision.

*So ordered.*